**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

FIRSTMERIT BANK, N.A., as successor-in-interest to the FDIC, as Receiver for Midwest Bank and Trust Company,

        Plaintiff,

    v.

2200 NORTH ASHLAND, LLC, et al.

        Defendants.

No. 1:12-cv-00572

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, FirstMerit Bank, N.A., for its Memorandum of Law in Support of its Motion for Summary Judgment, states as follows:

## I.      STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001).  In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *King v. Preferred Tech. Group*, 166 F.3d 887, 890 (7th Cir. 1999).

To overcome a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in its pleadings; rather, the non-moving party must present

sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Robin v. Espo Eng'g Corp.*, 200 F. 3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rather, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because they are not material. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996).

## II.     ARGUMENT

### A.     FirstMerit has established a *prima facie* case entitling it to summary judgment on Counts I through IV of the Complaint.

Certain allegations required by the IMFL to be pleaded in a foreclosure complaint are implied as a matter of law, including indebtedness, interest, defaults, and fees. 735 ILCS 5/15-1504(a) – (b). When a party does not submit a verified answer denying the facts in the complaint, or if the party has stated that "it has no knowledge of such allegation sufficient to form a belief," then "a sworn verification of the complaint or a separate affidavit setting forth such facts is sufficient evidence thereof against such party and no further evidence of such fact shall be required." *Harris N.A. v. United States*, 2011 U.S. Dist. LEXIS 22066, *4-5 (N.D. Ill. 2011); *citing* 735 ILCS 5/15-1506(a)(1). In these circumstances, "where all the allegations of fact in the complaint have been proved by verification of the complaint or affidavit, the court upon motion supported by an affidavit stating the amount which is due the mortgagee, shall enter

a judgment of foreclosure as requested in the complaint." 735 ILCS 5/15-1506(a)(2) (emphasis supplied).

In order for a plaintiff in a mortgage foreclosure case to establish a *prima facie* case, it need only establish that (i) it is the holder of the note and the mortgage; (ii) that those documents were properly executed; and (iii) a default has occurred thereunder. *Rago v. Cosmopolitan Nat. Bank*, 89 Ill. App. 2d 12, 19, 232 N.E.2d 88, 93 (1st Dist. 1967). Thereafter, the burden shifts to the defendant to plead and prove an affirmative defense. *Id*.

As explained below, FirstMerit has established all three of these elements, and no questions of material fact exist as to any of them.

1.  FirstMerit is the owner and holder of the Notes and Mortgages.

The various allonges to the Notes and Assignments of the Mortgages attached to the Complaint establish that FirstMerit is the current rightful holder and owner of all of the Notes and Mortgages described in the Complaint. Complaint [102], Exs. 8, 11-12, 19-20, 25-26, 31-32, 38, 41; FRCP 56(c) Snelson Aff. ¶¶ 10, 13, 17, 21, 22, 29, 32, 35. Borrowers are not contesting these facts.

2.  All of the Notes and Mortgages were properly executed.

The Borrowers do not dispute that they signed and agreed to the terms of all of the Notes and Mortgages, as well as the 2011 Modification Agreement. Complaint [102] at Ex. 3 The Borrowers also do not deny that they executed the Apartment Building Forbearance Agreement, which acknowledged the validity of all of the loan documents at issue in this case, including the Notes and Mortgages.[1] Complaint [102], Ex. 3, Answer [113], ¶ 38. Consequently, no issue of fact exists as to this element.

───────────────────

[1] It is true that two of the Guarantors, Tefik and Hodo, deny signing the 2011 Modification Agreement, and Tefik also denies that he signed the Apartment Building Forbearance Agreement. But these claims of

3

3. <u>FirstMerit has established that defaults existed under the Notes and Mortgages, as well as under the Apartment Building Forbearance Agreement.</u>

The Borrowers do not, and could not, challenge FirstMerit's contention that they were in default under the Notes and Mortgages at the time this case was initiated. Pursuant to the Apartment Building Forbearance Agreement, the Borrowers expressly acknowledged that they were in default under those credit agreements. [Complaint [102], Ex. 3, ¶ I. FirstMerit has also established these defaults via affidavit. FRCP 56(c) Snelson Aff. at ¶ 41-42.

The Borrowers do, however, deny that they defaulted under the Apartment Building Forbearance Agreement, which allowed FirstMerit to restart this case that was held in abeyance during the forbearance period set forth in Forbearance Agreements ("Forbearance Period") Answer [113], ¶¶ 42-43. More specifically, the Borrowers do not deny that defaults existed under the Apartment Building Forbearance Agreement, but rather they assert that Boyack caused the defaults by failing to make monthly payments under the Notes, and failing to make certain real estate taxes payments called for under the Apartment Building Forbearance Agreements, out of the net cash flow that should have been generated by the Apartment Buildings. Answer [113], ¶ 43.

There are several independent reasons why the Borrowers' theory fails as a matter of law and thus why FirstMerit has established that no material issue of fact exists as to the issue of default. Each is explained below.

First, the Borrower's theory is belied by the plain terms of the Apartment Building Forbearance Agreement. It is axiomatic that this Court must interpret a written agreement

---

forgery do not affect FirstMerit's right to foreclose any of the Mortgages because Hodo and Tefik are not Borrowers under any of the Notes or Mortgagors under any the Mortgages. Moreover, as explained *infra*, FirstMerit is entitled to summary judgment on the affirmative defenses asserted by Hodo and Tefik based on these purported forgeries.

according its plain and ordinary meaning, and if the language of the agreement is not ambiguous, then its interpretation of the contract is a question of law. *Gallagher v. Lenhart,* 226 Ill. 2d 208, 232-33, 874 N.E. 43, 58 (2007). The Apartment Building Forbearance Agreement clearly states that the Borrowers, not Boyack, had the obligation to make monthly payments under the Note and to make certain real estate tax payments. Complaint [113], Ex. 3, ¶ 4. Nowhere in the Apartment Building Forbearance Agreement is it stated, or even implied, that Boyack was obligated to do anything. Indeed, he is not even a party to it. The Borrowers are simply trying, out of whole cloth, to transfer to Boyack their obligations under the Apartment Building Forbearance Agreement. Fundamental principles of contract interpretation preclude them from doing so.

In addition, even this Court could somehow interpret the Apartment Building Forbearance Agreement to mean that the parties intended for Boyack to make certain of the payments called for thereunder, the Borrower's theory still would not hold any water. Section 1704(d) of the IMFL, which was expressly incorporated into the Agreed Order appointing Boyack as Receiver, sets forth how a receiver is to allocate net receipts from the operation of real estate. Payments to the mortgage lender are not included. Therefore, absent an order of this Court, which the Borrowers never sought, Boyack could not have made monthly loan payments to FirstMerit under any circumstances.

There is yet another reason why the Borrower's theory regarding Boyack is fatally flawed. Under Illinois law, a receiver is an officer of the court, not an agent of any party in the case. *Heritage Pullman Bank v. Am. Nat'l Bank & Trust Co.*, 164 Ill. App. 3d 680, 687, 518 N.E.2d 231, 236 (1st Dist. 1987), *accord U.S. Fidelity and Guaranty Co. v. Old Orchard Plaza Ltd. Pshp.*, 284 Ill. App. 765, 774, 672 N.E.2d 882 (1st Dist. 1996). Moreover, "Illinois law is

clear that property in the hands of the receiver is in effect custody of the court." *Chicago Title & Trust Com. v. Barnett Vincennes Hotel Corp.*, 300 Ill. App. 200, 204-05, 20 N.E. 2d 871, 873-4 (1st Dist. 1939).

These legal principles dispose of the Borrower's theory. The Apartment Buildings are under the control of this Court, through Boyack. This means that what the Borrowers are really arguing is that the Court, *via* Boyack, mismanaged the Apartment Buildings, and that this conduct somehow precludes FirstMerit from foreclosing the Mortgages. This obviously is not a viable theory in a mortgage foreclosure case for the simple reason that Boyack is not a representative of FirstMerit.[2] Therefore, any conduct or omission made by Boyack is not attributable to FirstMerit and cannot under any circumstances give rise a defense to the Borrowers in this case.[3]

But there is one final, and fundamental reason, why the Borrowers' assertions regarding Boyack cannot, and do not, create a question of fact as to whether they were in default under the Apartment Building Forbearance Agreement. The Borrowers defaulted under several different provisions of the Apartment Building Forbearance Agreement, and some of those defaults had absolutely nothing to do with Boyack's management of the Apartment Buildings. For example,

---

[2]At one point in this case, the Borrowers were arguing that FirstMerit should be held responsible for Boyack's conduct because it asked that he be appointed as Receiver in the first place. This argument, in addition to being dubious from a legal standpoint (the IMFL expressly allows a mortgagee to seek the appointment of a receiver where certain elements are met), should not hold the Court's attention long because the Borrowers agreed to the order appointing Boyack as Receiver.

[3]Taking the Borrowers' implausible argument one step further, even if the Apartment Building Forbearance Agreement called for Boyack to make monthly payments to FirstMerit under the Notes (which it does not), and the Borrowers had sought this Court's approval to allow him to make those payments (which they did not), the Borrowers' theory still fails because there was no cash flow available to make these payments. This Court has approved every one of Boyack's Reports that evidence this fact. The Borrowers have of course regularly complained, in rather opaque fashion, that Boyack's mismanagement of the Apartment Buildings caused the cash flow shortfall, but this Court has rejected every one of those objections, and despite this Court repeated invitation, the Borrowers have never requested that this Court hold an evidentiary hearing to determine whether to replace or remove Boyack as Receiver.

the Borrowers were required under the Apartment Building Forbearance Agreement to close on the sale of the Lawrence House Property by October 31, 2012.  Complaint [102], Ex. 3, ¶ 4 (iv). They did not do so.[4]  The Borrowers were also obligated to repay all of the Notes in full prior to the expiration of the Forbearance Period.  Complaint, Ex. 3, ¶ 9 (i).  They did not do that either. Statement of Facts, ¶¶ 75-78.  The Borrowers cannot seriously argue that anything Boyack allegedly did or did not do while operating the Apartment Buildings was in any way, shape or form related to these two breaches of the Apartment Building Forbearance Agreement

For all of the foregoing reasons, First Merit has established beyond a shadow of a doubt that the Borrowers defaulted under the Apartment Building Forbearance Agreement.

4.  <u>FirstMerit has sufficiently established the amounts due and owing under the Notes</u>.

FirstMerit has submitted the Snelson Damages Affidavit to establish the amounts that are currently due and owing under the Notes.  The Borrowers have not come forth with any admissible evidence to challenge the accuracy of the facts set forth therein. As such, FirstMerit has sufficiently proven the amounts that are due and owing under the Notes.

**B.  FirstMerit is entitled to summary judgment on the Borrowers' affirmative defense related to the enforceability of the 2011 Modification Agreement.**

The Borrowers have pleaded one affirmative defense to the foreclosure of the Mortgages: the Ashland Mortgagor alleges that the Ashland Mortgage does not secure the Apartment Building Notes because the 2011 Modification Agreement, which, *inter alia*, modified the Ashland Mortgage so as to pledge the Ashland Property to secure them, was not properly "consummated" because, even though the 2011 Modification Agreement expressly states that

---

[4] The Borrowers cannot dispute that the sale of the Lawrence House Property closed on or about August 5, 2013.

was effective as of August 19, 2011, it was allegedly not signed and/or delivered until after the Ashland Note was repaid in full on August 23, 2011. For the reasons set forth below, FirstMerit is entitled to summary judgment on this affirmative defense.

As an initial matter, the Ashland Borrower waived its right to assert this Affirmative Defense. In Illinois, a party may contractually agree to waive all defenses. *Bank of Am., N.A. v. 108 N. State Retail LLC*, 401 Ill. App. 3d 158, 172. 928 N.E.2d 42, 55 (1st Dist. 2010). When such waivers are clear and unambiguous, Illinois courts consistently enforce them. *Id.* Here, the Ashland Forbearance Agreement expressly states that:

> Borrower(s) acknowledge, admit and agree that they have no defenses, affirmative defenses, claims, counterclaims or setoffs to the enforcement by Lender of the obligations and liabilities of Borrower(s) under the Loan Documents or any of them, and to the actions of Lender, its officers, directors, employees, agents and attorneys with respect thereto, including but not limited to, any claim or defense based on the breach of the duty of good faith and fair dealing.

Complaint [102], Ex. 3 ¶ 2(a). Since the Ashland Mortgagor is included as one of the Borrowers under the Apartment Building Forbearance Agreement (Complaint [102], Ex. 3, p. 1), and because the Ashland Mortgagor admits that it entered into the Apartment Building Forbearance Agreement (Answer [113], ¶ 38), the Ashland Mortgagor unquestionably waived the Affirmative Defense that it asserts. The Ashland Mortgagor could not possibly have stated more clearly that it has no defenses to the enforcement of the Ashland Mortgage as modified by the 2011 Modification Agreement, in this case. And the Apartment Building Forbearance Agreement was entered into during the pendency of this case, thus precluding any possible argument that the Borrowers did not know or understand what they were waiving. On this basis alone, the Court should enter summary judgment on the Ashland Mortgagor's Affirmative Defenses.

But there is more. In the Borrowers' Reply in Support of its Motion for Leave to file an Amended Answer and Affirmative Defenses (which this Court denied), the Borrowers, including the Ashland Mortgagor, expressly stated that they were no longer pursuing this theory. To quote, the Borrowers stated that "Defendant is not arguing that if the [2011 Modification A]greement were valid it would not be valid as of August 19, 2011." Borrowers' Reply [288], p. 3, fn. 1. This unequivocal statement eviscerates the entire Affirmative Defense asserted by the Ashland Mortgagor.

Were all of this not enough, this Court already has categorically rejected this theory of unenforceability espoused by the Ashland Mortgagor when it opposed FirstMerit's Motion to Appoint Receiver over the Ashland Property for two reasons. Order of Court [137]. First, this Court recognized that under Illinois law, the parties to a contract can agree to make it effective on a date prior to when it is signed. *Asset Recovery Contr., LLC v. Walsh Constr. Co.,* 2012 Ill. App. (1st) 101226, p. 62, 980 N.E.2d 708, 724 (2012). The 2011 Modification Agreement clearly states that it effective as of August 19, 2011; therefore it makes no difference whatsoever when the 2011 Modification Agreement was signed (though all of the signatures bear the date of August 19, 2011) or when it was delivered. Second, this Court noted that counsel for the Ashland Mortgagor admitted in open court on February 21, 2013, that the Ashland Mortgage secured all of the Apartment Building Notes.

Finally, even if there could still be an issue regarding the enforceability of the 2011 Modification Agreement after all of the above, FirstMerit would still be is still entitled to summary judgment on the Affirmative Defense because the Ashland Mortgagor expressly ratified the 2011 Modification Agreement as part of the Apartment Building Forbearance Agreement. Ratification occurs when the principal learns of an unauthorized transaction, then

retains the benefits of the transaction or takes a position inconsistent with nonaffirmation. *Gambino v. Blvd. Mortg. Corp.*, 398 Ill. App. 3d 21, 922 N.E.2d 380, 413 (1st Dist. 2009). For ratification to occur, the principal must, with full knowledge of the act, manifest an intent to abide and be bound by the transaction. *Id.*

Here, in the Apartment Building Forbearance Agreement, the Ashland Mortgagor "[hereby ratifie[d] and confirm[d] the Notes, Mortgages and Loan Documents, as previously amended or modified and as amended or modified hereby, and the liens and security interest created hereby and thereby[.]" Complaint [102], Ex. 3, ¶ 9. The Ashland Mortgagor therefore expressly and unequivocally ratified the 2011 Modification Agreement. Indeed, it is difficult to imagine how it could have done so any more clearly.

For all of the foregoing reasons, FirstMerit is entitled to summary judgment on the Ashland Mortgagor's affirmative defense.

## C. FirstMerit is entitled to summary judgment against the Borrowers for breach of the Notes.

In Illinois, a promissory note, absolute on its face, creates in itself the presumption that a debt is due and owing from the maker to the payee. *H. Watson Development Co., Inc. v. Bank & Trust Co. of Arlington Heights*, 58 Ill. App. 3d 423, 431-432, 374 N.E.2d 767, 774 (1st Dist. 1978); *Steiner v. Rig-A-Jig Toy Co.*, 10 Ill. App. 2d 410, 418, 135 N.E.2d 166, 170 (1st Dist. 1956). An affidavit alleging that the plaintiff's demand is the amount of the note sued on, with interest, as set out in the complaint, and that there is due from the defendant to the plaintiff, after allowing all just credits, deductions, and set-offs, the sum named in the note, with interest, is sufficient to prove the amount of money due. *Wadsworth v. Aetna Nat. Bank*, 84 Ill. 272, 1876 LEXIS, at *3 (1876). A borrower's allegation that it is not indebted under the promissory note is

insufficient to rebut the presumption that the debt is due. *H. & E. Holding Co. v. W.A. Davis Lumber Co.*, 229 Ill. App. 409, 412-413, 53 LEXIS, at *5-6 (1st Dist. May 1923).

Pursuant to the Forbearance Agreements, as discussed in some length *supra,* the Borrowers have admitted that the Notes are valid and enforceable and that they are in default under them. Complaint [102], Ex. 3, ¶¶ I, 2(a), 4(i)), Ex. 4 ¶¶ I, 2(a), 4(i). The Borrowers also acknowledge, admit, and agree that they have no defenses to the collection of the amounts due under the Notes. Complaint [102], at Ex. 3 ¶ 2(a), Ex. 4 ¶ 2(a). Finally, FirstMerit has established the amounts now due and owing under the Notes. Snelson Damages Affidavit [325]. As such, FirstMerit is entitled to summary judgment as a matter of law on the claims against the Borrowers for breach of the Notes.

## D.  FirstMerit is entitled to summary judgment against the Guarantors for breach of the Guaranties.

In Illinois, the *prima facie* elements of an action to collect a guaranty are that (1) the defendant executed a written guaranty for another's indebtedness and (2) that the principal obligor has defaulted in the payment thereof. *Aetna Plywood & Veneer Co. v. Robineau*, 336 Ill. App. 339, 340, 83 N.E.2d 896, 897 (1st Dist. 1949). Pursuant to Illinois law, an affidavit alleging that there is due from the defendant to the plaintiff, after allowing all just credits, deductions, and set-offs, the sum named, with interest, is sufficient to prove the amount of money due. *Wadsworth*, 84 Ill. 272, 1876 LEXIS, at *3. A defendant's mere conclusion that it is not indebted to the plaintiff is insufficient to rebut the same. *H. & E. Holding Co.*, 229 Ill. App. at 412-413, 53 LEXIS, at *5-6.

All of the Guarantors admit that they executed the Guaranties and that they are valid. Answer [113], ¶¶ 14, 18, 22, 26, 54, 58, 62, 66; Answer [114], ¶¶ 14, 18, 22, 26, 29, 32, 54, 58, 62, 66, 105, 110; Answer [194], ¶¶ 14, 29, 32, 54, 105, 110. The Guaranties are absolute and

unconditional guaranties to pay, when due, all of the liabilities and obligations of the Borrowers, then or thereafter existing, whether known or unknown to the Guarantors at the time of the execution of the Guaranties. For example, the 7645 Sheridan Guaranties state, in relevant part,

> Guarantor absolutely, unconditionally and irrevocably guarantees to Lender…[t]he full and prompt payment when due, whether at stated maturity, upon acceleration or otherwise, and at all times thereafter, of any and all debts, liabilities and obligations of the Borrower for the payment of money to Lender under or related to the Loan, however created, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing, due or to become due, known or unknown to Guarantor at the time of the execution of this Guaranty, including without limitation, all debts, liabilities and obligations of Borrower to Lender under the Note, the Loan Agreement or any of the other Loan Documents…

Complaint [102], Exs. 13-16.

The Guarantors' bare denials of the allegations of the Complaint are insufficient to rebut the plain language of the Guaranties and the FRCP 56(c) Snelson Affidavit that establish that the Guarantors are obligated to pay the amounts due and owing under the Notes after the Borrowers defaulted under them. Snelson Damages Affidavit [325]; FRCP 56(c) Snelson Aff. at ¶ 63-68. FirstMerit has thus established a *prima facie* case on its claims on the Guaranties.

## E.  FirstMerit is entitled to summary judgment on the affirmative defenses of forgery asserted by Tefik and Hodo.

By their execution of the Guaranties, Tefik and Hodo waived their right to assert any defenses to the collection of the Guaranties. Complaint [102], Exs. 13-6, 21,-2, 27-8, 33-4, 42-4, 45-7. This of course including any defenses bared on forgery FirstMerit is thus entitled to summary judgment against them on that basis alone.

Tefik, but not Hodo, asserts as his Second and Third Affirmative Defenses to his liability as a guarantor that he did not sign the Forbearance Agreements.[5]  The problem for Tefik, however, is that his signatures on the Forbearance Agreements are notarized.  A party alleging forgery bears the burden of proof.  *Koepke v. Schumacher*, 406 Ill. 93, 96, 92 N.E.2d 152, 155 (1950).  A notarization of a signature on a document constitutes *prima facie* proof of the execution of an instrument.  *Krueger v. Dorr*, 22 Ill. App. 2d 513, 161 N.E.2d 433, 440 (2nd Dist. 1959).  A notarized signature may not be impeached except by clear, convincing, satisfactory proof of forgery by disinterested witnesses.  *Id.*

Here, Edmonds, who notarized the signatures of Tefik and Hodo, testified at her deposition that she in fact witnessed Tefik execute the Forbearance Agreements.  *See* Exhibit A, pp. 22:14-8, 23:10-5.  As a matter of law, therefore, in the absence of testimony from more than one independent witness (which Tefik has not produced), the testimony of Edmonds defeats Tefik's forgery defenses as to the Forbearance Agreements.

Moreover, because Hodo admits to signing the Apartment Building Forbearance Agreement, and since Tefik cannot prove that he did not, their Affirmative Defense based on the purported forgery on the 2011 Modification Agreement cannot be maintained.  As explained above, the signatories to the Apartment Building Forbearance Agreement, including Hodo and Tefik, expressly ratified the 2011 Modification Agreement.  Complaint [102], Ex. 3 ¶ 9.  Thus, it makes absolutely no difference whether Hodo and Tefik actually signed the 2011 Modification Agreement.

---

[5]Again, because Tefik, in his individual capacity, did not sign any of the Notes or Mortgages, it makes no difference for purposes of FirstMerit's causes of action based on the Mortgages or Notes whether he signed the Forbearance Agreements or the 2011 Modification Agreement.

The Apartment Building Forbearance Agreement defeats the forgery defenses asserted by Hodo and Tefik for another reason. As Guarantors, they signed the "Acknowledgment, Ratification and Consent" portion of the Apartment Building Forbearance Agreement. In doing so, Hodo and Tefik each expressly "ackowledge[d] and agree[d] that … he has no defenses … to the enforcement by [FirstMerit] of … his respective obligations and liabilities under … his respective Guaranty…" Complaint [102], Ex. 3, p. 17. This acknowledgement and agreement precludes Hodo and Tefik from asserting their Affirmative Defenses of forgery in this case.

Finally, whether or not Tefik and Hodo executed the Forbearance Agreements or the 2011 Modification Agreement is, in the end, a complete red herring. Tefik and Hodo admit that they signed the Guaranties upon which FirstMerit is basing its causes of action against them. Neither the 2011 Modification Agreement nor the Forbearance Agreements adversely affected their guaranty obligations to FirstMerit. Indeed, if anything, those agreements benefit Tefik and Hodo as guarantors. The 2011 Modification Agreement added an additional property to FirstMerit's collateral package securing the Notes, thus potentially reducing the amount of their guaranty liability. And the Forbearance Agreements provided Tefik and Hodo with additional time to repay whatever indebtedness the Borrowers could not retire. The point, however, is that because neither the 2011 Modification Agreement nor the Forbearance Agreements modified Tefik and Hodo's Guaranties, it is irrelevant whether their signatures on those documents are authentic.

### III. CONCLUSION

For all of the reasons stated herein, there are no genuine issues of material fact, and Plaintiff is entitled to judgment as a matter of law.

Respectfully submitted,

FirstMerit Bank, N.A., as successor-in-interest to
the FDIC, as Receiver for Midwest Bank and Trust
Company,

By:    s/William J. Serritella, Jr.
          wserritella@agdglaw.com

William J. Serritella, Jr. (ARDC #6210001)
Brianna M. Sansone (ARDC #6298677)
Aronberg Goldgehn
Counsel for Plaintiff
330 North Wabash, Suite 1700
Chicago, Illinois 60611
(312) 828-9600

1547244.17