IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FIRSTMERIT BANK, N.A., as successor-in-interest to the FDIC, as Receiver for Midwest Bank and Trust Company,<br><br>    Plaintiff,<br><br>  v.<br><br>2200 NORTH ASHLAND, LLC, et al.<br><br>    Defendants. | No. 1:12-cv-00572 |

**PLAINTIFF'S LOCAL RULE 56.1**
**STATEMENT OF UNDISPUTED MATERIAL FACTS**

**Parties, Jurisdiction and Venue**

  1.  Plaintiff, FirstMerit Bank, N.A. ("FirstMerit"), as successor-in-interest to the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Midwest Bank and Trust Company ("Midwest"), is a citizen of the State of Ohio because it is a national association chartered under the laws of the State of Ohio, and it maintains its principal place of business and headquarters in that State. FRCP 56(c) Snelson Aff. at ¶ 9.

  2.  FirstMerit acquired the assets of Midwest Bank from the FDIC on May 14, 2010. FRCP 56(c) Snelson Aff. at ¶ 10.

  3.  2200 North Ashland, LLC ("Ashland Mortgagor") is a citizen of the State of Illinois because it is an Illinois limited liability company with its principal place of business in Chicago, Illinois, and all of its members are citizens of the State of Illinois. Answer [113] at ¶ 4.

  4.  7645 North Sheridan, LLC ("7645 Sheridan Borrower") is a citizen of the State of Illinois because it is an Illinois limited liability company with its principal place of business in Chicago, Illinois, and all of its members are citizens of the State of Illinois. Answer [113] at ¶ 4.

5.	6770 N. Clark, LLC ("Clark Borrower") is a citizen of the State of Illinois because it is an Illinois limited liability company with its principal place of business in Chicago, Illinois, and all of its members are citizens of the State of Illinois.  Answer [113] at ¶ 4.

6.	4526 North Sheridan, LLC ("4526 Sheridan Borrower") is a citizen of the State of Illinois because it is an Illinois limited liability company with its principal place of business in Chicago, Illinois, and all of its members are citizens of the State of Illinois.  Answer [113] at ¶ 4.

7.	Lawrence House, LLC ("Lawrence Borrower") is a citizen of the State of Illinois because it is an Illinois limited liability company with its principal place of business in Chicago, Illinois, and all of its members are citizens of the State of Illinois. Answer [113] at ¶ 4.

8.	First S & H Management, LLC ("S&H Borrower") is a citizen of the State of Illinois because it is an Illinois limited liability company with its principal place of business in Chicago, Illinois, and all of its members are citizens of the State of Illinois. Answer [206] at ¶ 4.

9.	Astor House, LLC ("Astor House") is citizen of the State of Illinois because it is an Illinois limited liability company with its principal place of business in Chicago, Illinois, and all of its members are citizens of the State of Illinois.  Answer [113] at ¶ 5.

10.	Sam Menetti ("Sam"), Hodo Menetti ("Hodo"), Pullump L. Mehmeti, a/k/a Pullump L. Menetti, individually and as trustee of the Pullump L. Menetti 2007 Irrevocable Trust ("Pullump"), Tefik H. Mehmeti, a/k/a/ Tefik H. Menetti, and Burim Mehmeti, a/k/a Burim Menetti, individually and as trustee of the Burim Menetti 2007 Irrevocable Trust ("Burim") are citizens of the State of Illinois because they all maintain their principal place of residence in this State.  Answer [113] at ¶ 5; Answer [114] at ¶ 5; Answer [194] at ¶ 5.

11. On July 19, 2013, this Court entered a default order against Mid-American Elevator Company, Diamond Bankcorp, Inc., Schmidt Salzman & Moran, Ltd., and the City of Chicago. Default Order [205].

12. The mortgages at issue in the Second Amended Complaint are secured by property located in this District, and a substantial portion of the acts and omissions giving rise to FirstMerit's claims alleged in the Complaint occurred here. Answer [113] at ¶ 7; Answer [114] at ¶ 7; Answer [194], at ¶ 7; Answer [206] at ¶ 7.

### The Ashland Loan, Note, and Mortgage

13. On May 22, 2008, the Ashland Mortgagor borrowed $3,100,000.00 from Midwest for business purposes ("Ashland Loan"), which was evidenced by, among other loan documents, a promissory note dated May 22, 2008, in the principal amount of $3,100,000.00, payable to Midwest ("Ashland Note"). Compl. [102] at ¶ 8, Ex. 6; Answer [113] at ¶ 50; FRCP 56(c) Snelson Aff. at ¶ 11.

14. The Ashland Note was secured by, among other things, a mortgage dated May 22, 2008 ("Ashland Mortgage"), on the property commonly known as 2200 N. Ashland Avenue, Chicago, Illinois, and legally described in the Ashland Mortgage ("Ashland Property"). Compl. [102] at Ex. 7; Answer [113] at ¶¶ 9, 50; FRCP 56(c) Snelson Aff. at ¶ 12.

15. On February 18, 2011, the FDIC assigned the Ashland Mortgage to FirstMerit. Compl. [102] at Ex. 8; Answer [113] at ¶¶ 10, 50; FRCP 56(c) Snelson Aff. at ¶ 13.

### The 7645 Sheridan Loan, Note, Mortgage and Guaranties

16. On December 15, 2008, the 7645 Sheridan Borrower borrowed $5,600,000.00 from Midwest for business purposes ("7645 Sheridan Loan"), which was evidenced by, among other loan documents, a promissory note dated December 15, 2008, in the principal amount of

$5,600,000.00, payable to Midwest ("7645 Sheridan Note"). Compl. [102] at ¶ 12, Ex. 9; Answer [113] at ¶ 54; FRCP 56(c) Snelson Aff. at ¶ 14.

17. The 7645 Sheridan Note was secured by a mortgage dated December 15, 2008 ("7645 Sheridan Mortgage"), on the property commonly known as 7645 North Sheridan Road, Chicago, Illinois ("7645 Sheridan Property"). Compl. [102] at Ex. 10; Answer [113] at ¶¶ 13, 54; FRCP 56(c) Snelson Aff. at ¶ 15.

18. Contemporaneously with the execution of the 7645 Sheridan Note, Astor House, Pullump, Tefik and Burim ("7645 Sheridan Guarantors") each executed a separate, absolute, unconditional, unlimited, irrevocable and continuing guaranty of all of the 7645 Sheridan Borrower's indebtedness to Midwest, including, without limitation, the indebtedness evidenced by the 7645 Sheridan Note ("7645 Sheridan Guaranties"). Compl. [102] at ¶ 14, Exs. 13-16; Answer [113] at ¶¶ 14, 54; Answer [114] at ¶¶ 14, 54; Answer [194] at ¶¶ 14, 54; FRCP 56(c) Snelson Aff. at ¶ 16.

19. On March 3, 2011, the FDIC assigned the 7645 Sheridan Mortgage to FirstMerit, and on January 20, 2012, the FDIC executed an allonge to the 7645 Sheridan Note in favor of FirstMerit. Compl. [102] at ¶ 15, Exs. 11-12; FRCP 56(c) Snelson Aff. at ¶ 17.

**The 4526 Sheridan Loan, Note, Mortgage, and Guaranties**

20. On May 22, 2008, the 4526 Sheridan Borrower borrowed $3,700,000.00 from Midwest for business purposes ("4526 Sheridan Loan"), which was evidenced by, among other loan documents, a promissory note dated May 22, 2008, in the principal amount of $3,700,000.00, payable to Midwest ("4526 Sheridan Note"). Compl. [102] at ¶ 16, Ex. 17; Answer [113] at ¶ 58; FRCP 56(c) Snelson Aff. at ¶ 18.

4

21. The 4526 Sheridan Note was secured by a mortgage dated May 22, 2008 ("4526 Sheridan Mortgage"), on the property commonly known as 4526 North Sheridan Road, Chicago, Illinois ("4526 Sheridan Property"). Compl. [102] at Ex. 18; Answer [113] at ¶¶ 17, 58; FRCP 56(c) Snelson Aff. at ¶ 19.

22. Contemporaneously with the execution of the 4526 Sheridan Note, Sam and Hodo ("4526 Sheridan Guarantors") each executed a separate, absolute, unconditional, unlimited, irrevocable and continuing guaranty of all of the 4526 Sheridan Borrower's indebtedness to Midwest, including, without limitation, the indebtedness evidenced by the 4526 Sheridan Note ("4526 Sheridan Guaranties"). Compl. [102] at Exs. 21-22; Answer [113] at ¶¶ 18, 58; Answer [114] at ¶¶ 18, 58; FRCP 56(c) Snelson Aff. at ¶ 20.

23. On January 19, 2011, the FDIC assigned the 4526 Sheridan Mortgage to FirstMerit, and on January 20, 2012, the FDIC executed an allonge to the 4526 Sheridan Note in favor of FirstMerit. Compl. [102] at ¶ 19, Exs. 19-20; FRCP 56(c) Snelson Aff. at ¶ 21.

### The Clark Loan, Note, Mortgage, and Guaranties

24. On May 22, 2008, the Clark Borrower borrowed $2,910,000.00 from Midwest for business purposes ("Clark Loan"), which was evidenced by, among other loan documents, a promissory note dated May 22, 2008, in the principal amount of $2,910,000.00, payable to Midwest ("Clark Note"). Compl. [102] at ¶ 20, Ex. 23; Answer [113] at ¶ 62; FRCP 56(c) Snelson Aff. at ¶ 22.

25. The Clark Note was secured by a mortgage dated May 22, 2008 ("Clark Mortgage"), on the property commonly known as 1673 W. Pratt Boulevard, Chicago, Illinois ("Clark Property"). Compl. [102] at Ex. 24; Answer [113] at ¶¶ 21, 62; FRCP 56(c) Snelson Aff. at ¶ 23.

5

26. Contemporaneously with the execution of the Clark Note, Sam and Hodo ("Clark Guarantors") each executed a separate, absolute, unconditional, unlimited, irrevocable and continuing guaranty of all of the Clark Borrower's indebtedness to Midwest, including, without limitation, the indebtedness evidenced by the Clark Note ("Clark Guaranties"). Compl. [102] at Exs. 27-28; Answer [113] at ¶¶ 22, 62; Answer [114] at ¶¶ 22, 62; FRCP 56 (c) Snelson Aff. at ¶ 24.

27. On February 23, 2011, the FDIC assigned the Clark Mortgage to FirstMerit, and on January 20, 2012, the FDIC executed an allonge to the Clark Note in favor of FirstMerit. Compl. [102] at ¶ 23, Exs. 25-26; FRCP 56(c) Snelson Aff. at ¶ 25.

### The Lawrence Loan, Note, Mortgage, and Guaranties

28. On May 28, 2008, the Lawrence Borrower borrowed $6,956,000.00 from Midwest for business purposes ("Lawrence Loan"), which was evidenced by, among other loan documents, a promissory note dated May 28, 2008, in the principal amount of $6,956,000.00, payable to Midwest ("Lawrence Note"). Compl. [102] at ¶ 24, Ex. 29; Answer [113] at ¶ 66; FRCP 56(c) Snelson Aff. at ¶ 26.

29. The Lawrence Note was secured by a mortgage dated May 28, 2008 ("Lawrence Mortgage"), on the property commonly known as 1020 W. Lawrence Avenue, Chicago, Illinois ("Lawrence Property"). Compl. [102] at Ex. 30; Answer [113] at ¶¶ 25, 66; FRCP 56(c) Snelson Aff. at ¶ 27.

30. Contemporaneously with the execution of the Lawrence Note, Sam and Hodo ("Lawrence Guarantors") each executed a separate, absolute, unconditional, unlimited, irrevocable and continuing guaranty of all of the Lawrence Borrower's indebtedness to Midwest, including, without limitation, the indebtedness evidenced by the Lawrence Note ("Lawrence

6

Guaranties"). Compl. [102] at Exs. 33-34; Answer [113] at ¶¶ 26, 66; Answer [114] at ¶¶ 26, 66; FRCP 56(c) Snelson Aff. at ¶ 28.

31. On February 14, 2011, the FDIC assigned the Lawrence Mortgage to FirstMerit, and on January 20, 2012, the FDIC executed an allonge to the Lawrence Note in favor of FirstMerit. Compl. [102] at ¶ 27, Exs. 31-32; FRCP 56(c) Snelson Aff. at ¶ 29.

### The S&H February Loan, Note, and Guaranties

32. On February 4, 2008, the S&H Borrower borrowed $603,000.00 from Midwest for business purposes ("S&H February Loan"), which is evidenced by, among other loan documents, a promissory note dated February 4, 2008, in the amount principal of $603,000.00 payable to Midwest ("S&H February Note"), as has been modified, amended, and renewed from time to time. Compl. [102] at ¶ 28, Exs. 35-37; Answer [206] at ¶ 81; FRCP 56(c) Snelson Aff. at ¶ 30.

33. Contemporaneously with the execution of the S&H February Loan Note, Pullump, Tefik, and Burim ("S&H February Guarantors") each executed a separate, absolute, unconditional, unlimited, irrevocable and continuing guaranty of all of the S&H Borrower's indebtedness to Midwest, including, without limitation, the indebtedness evidenced by the S&H February Note ("S&H February Guaranties"). Compl. [102] at ¶ 29, Exs. 42-44, Answer [114] at ¶¶ 29, 105; Answer [194] at ¶¶ 29, 105; FRCP 56(c) Snelson Aff. at ¶ 31.

34. On January 20, 2012, the FDIC executed an allonge the S&H February Note in favor of FirstMerit. Compl. [102] at ¶ 30; Ex. 38; FRCP 56(c) Snelson Aff. at ¶ 32.

### The S&H September Loan, Note, and Guaranties

35. On September 3, 2008, the S&H Borrower borrowed $272,000.00 from Midwest for business purposes ("S&H September Loan"), which is evidenced by, among other loan

7

documents, a promissory note dated September 3, 2008, in the principal amount of $272,000.00 payable to Midwest ("S&H September Note"), as has been modified, amended, and renewed from time to time. Compl. [102] at ¶ 31, Exs. 39-40; Answer [206] at ¶ 85; FRCP 56(c) Snelson Aff. at ¶ 33.

36. Contemporaneously with the execution of the S&H September Loan Note, Pullump, Tefik, and Burim ("S&H September Guarantors") each executed a separate, absolute, unconditional, unlimited, irrevocable and continuing guaranty of all of the S&H Borrower's indebtedness to Midwest, including, without limitation, the indebtedness evidenced by the S&H September Sheridan Note ("S&H September Guaranties"). Compl. [102] at ¶ 32, Exs. 45-47; Answer [114] at ¶¶ 32, 110; Answer [194] at ¶¶ 32, 110; FRCP 56(c) Snelson Aff. at ¶ 34.

37. On January 20, 2012, the FDIC executed an allonge the S&H September Note in favor of FirstMerit. Compl. [102] at ¶ 33, Ex. 41; FRCP 56(c) Snelson Aff. at ¶ 35.

**The Restructure, Mortgage Modification, and Forbearance Agreements**

38. On August 19, 2011, the Ashland Mortgagor, 4526 Sheridan Borrower, 7645 Sheridan Borrower, Clark Borrower, Lawrence Borrower (hereinafter sometimes collectively referred to as the "Apartment Building Borrowers") and FirstMerit entered into the Loan Document Modification and Cross-Collateralization and Cross-Default Agreement ("2011 Modification Agreement") whereby the parties agreed to restructure the Ashland Loan, 4526 Sheridan Loan, 7645 Sheridan Loan, Clark Loan, and Lawrence Loan, as evidenced by the indebtedness Ashland Note, 4526 Sheridan Note, 7645 Sheridan Note, Clark Note, and Lawrence Note was cross-collateralized and cross-defaulted such that (a) each of the Ashland Property, 4526 Sheridan Property, 7645 Sheridan Property, Clark Property and Lawrence Property secures each of the loans described above; and (b) a default under any of the Notes described above

8

constitutes a default under each of them. Compl. [102] at ¶ 34, Ex. 1 (¶¶ F and 1-7), Ex. 3 (¶ G); Answer [113] at ¶ 38; Snelson Affidavit [136] at ¶ 14; Pltf. Response Memo. [134] at Ex. 3 (TR. 6); Written Opinion [137]; FRCP 56(c) Snelson Aff. at ¶ 36. The 2011 Modification Agreement was part of an overall restructure of the Loans that included, among other things, an extension of the maturity of the Loans. FRCP 56(c) Snelson Aff. at ¶ 36.

39. The Ashland Loan was paid off on August 23, 2011. Snelson Aff. [136] at ¶ 18; FRCP 56(c) Snelson Aff. at ¶ 37.

40. Even though the Ashland Loan was paid in full, pursuant to the express terms of the 2011 Modification Agreement, the Ashland Mortgage continues to secure the 4526 Sheridan Loan, 7645 Sheridan Loan, Clark Loan, and Lawrence Loan (hereinafter sometimes collectively referred to as the "Apartment Building Loans"). Compl. [102] at ¶ 11, Ex. 1 (¶¶ 2, 7(a), 14, and 16), Ex. 3 (¶ A); Written Opinion [137]; FRCP 56(c) Snelson Aff. at ¶ 38.

41. The Apartment Building Borrowers defaulted under Apartment Building Loans because, among other defaults, they failed to make the monthly payments due under the Lawrence Note and Clark Note on and after November 25, 2011, and failed to pay the real estate taxes due on the Ashland Property, 4526 Sheridan Property, Clark Property, and 7645 Sheridan Property (the "Apartment Building Properties") for the second installment of the 2010 calendar year, and under the Lawrence Property for the first and second installment of the 2010 calendar year. Compl. [102] at ¶ 36, Ex. 3 (¶ I); Snelson Aff. [325] at ¶ 28; FRCP 56(c) Snelson Aff. at ¶ 39.

42. The S&H Borrower defaulted under the S&H February Loan and the S&H September Loan (hereinafter sometimes collectively referred to as the "S&H Loans") because it failed to make the monthly payments due under the S&H February Note and the S&H September

9

Note (hereinafter sometimes collectively referred to as the "S&H Notes") on and after December 4, 2011. Snelson Aff. [325] at ¶ 29; FRCP 56(c) Snelson Aff. at ¶ 40.

43. Each of the 4526 Sheridan Note, 7645 Sheridan Note, Clark Note, Lawrence Note and the S&H Notes (hereinafter sometimes collectively referred to as the "Notes") permit FirstMerit, upon default, to declare the entire unpaid principal balance due under the Notes and all accrued unpaid interest and fees immediately due and payable. Compl. [102] at Exs. 9, 17, 23, 29, 35-37, 39-40; Snelson Aff. [325] at ¶ 30; FRCP 56(c) Snelson Aff. at ¶ 41.

44. As a result of the defaults of the Apartment Building Borrowers and the S&H Borrower, as well as other defaults described in the Default Notices sent by FirstMerit on December 14, 2011 (the "Default Notices"), FirstMerit elected to declare the whole of the indebtedness of the Apartment Building Loans and S&H Loans immediately due and payable. Compl. [102] at ¶ 36, Grp. Ex. 2; Answer [113] at ¶ 36; Answer [206] at ¶ 36; Snelson Aff. [325] at ¶ 31; FRCP 56(c) Snelson Aff. at ¶ 42.

45. The Apartment Building Borrowers and the S&H Borrower (hereinafter sometimes collectively referred to as the "Borrowers") defaulted under the Notes because they failed and refused to pay the entire balance due thereunder, including interest thereon, after FirstMerit accelerated them on December 14, 2011. Snelson Aff. [325] at ¶ 32; FRCP 56(c) Snelson Aff. at ¶ 43. This default, as well as the ones described in the Default Notices, also constitutes a default under the mortgages described herein (sometimes collectively referred to as the "Mortgages." FRCP 56(c) Snelson Affidavit at ¶ 43.

46. On April 27, 2012, FirstMerit, Sam, Tefik, the Apartment Building Borrowers, the Ashland Mortgagor, and Astor House agreed to the appointment of Steven Boyack ("Boyack") as the receiver over the 4526 Sheridan Property, 7645 Sheridan Property, Clark

Property and Lawrence Property (sometimes collectively referred to herein as the "Apartment Building Properties"). Agreed Order [51] at p. 3, ¶ 2.

47. Boyack was ordered to manage the property as would a reasonably prudent person, to collect all rents relating to the Apartment Building Properties, and to allocate all receipts from the operation of the real estate in accordance with 735 ILCS 5/15-1704(d). Agreed Order [51] at p. 3 (¶ 1) and p. 4 (¶ 4).

48. To date, the Court has approved all eight of Boyack's Receiver's Reports and all of Boyack's requests for reimbursement of fees and expenses related to his management and operation of the Apartment Building Properties. Receiver's Reports [61, 69, 73, 99, 155, 202, 257, 302]; Orders [66-7, 71-2, 78-83, 105, 168-69, 280, 285, 315-17].

49. On August 2, 2012, FirstMerit and the Apartment Building Borrowers entered into that certain forbearance agreement ("Apartment Building Forbearance Agreement") pursuant to which FirstMerit agreed to forbear for a limited period of time from exercising its rights and remedies under the 2011 Modification Agreement, and the other credit agreements evidencing the Apartment Building Loans, subject to and upon the terms and conditions set forth in the Apartment Building Forbearance Agreement. Compl. [102] at Ex. 3; Answer [113] at ¶ 38; Am. Answer [157] at ¶ 38; FRCP 56(c) Snelson Aff. at ¶ 44.

50. Also on August 2, 2012, FirstMerit and the S&H Borrower entered into that certain forbearance agreement ("S&H Forbearance Agreement") pursuant to which FirstMerit agreed to forbear for a limited period of time from exercising its rights and remedies under the credit agreements evidencing the S&H Loans, subject to and upon the terms and conditions set forth in the S&H Forbearance Agreement. Compl. [102] at Ex. 4; Answer [206] at ¶ 39; FRCP 56(c) Snelson Aff. at ¶ 45.

51.     Pursuant to the Apartment Building Forbearance Agreement and the S&H Forbearance Agreement (hereinafter sometimes collectively referred to as the "Forbearance Agreements"), FirstMerit and the Borrowers agreed to cross-collateralize and cross-default the Ashland Mortgage and Apartment Building Loans with the S&H Loans such that each of the Mortgages secured all of the Loans, and a default under any of the Notes would constitute a default under all of the Notes.  Compl. [102] at Ex. 3 (¶ 4(x)); Answer [113] at ¶ 40; Answer [206] at ¶ 40; FRCP 56(c) Snelson Aff. at ¶ 46.

52.     In the Forbearance Agreements, the Borrowers admitted that they were in default under the Notes.  Compl. [102] at Ex. 3 (¶ I), Ex. 4 (¶ D); FRCP 56(c) Snelson Aff. at ¶ 47.

53.     The forbearance period under the Forbearance Agreements expired on December 31, 2012, and the Forbearance Agreements required the Borrowers to repay in full all of the Notes on that date.  Compl. [102] at Exs. 3 (¶ 3), Ex. 4 (¶ 3); FRCP 56(c) Snelson Aff. at ¶ 48.

### The Maturity of the Debt at Issue

54.     On its face, the 7645 Sheridan Note matured on December 15, 2013.  Compl. [102] at Ex. 9; FRCP 56(c) Snelson Aff. at ¶ 49.

55.     On its face, the 4526 N. Sheridan Note matured on May 25, 2013.  Compl. [102] at Ex. 17; FRCP 56(c) Snelson Aff. at ¶ 50.

56.     On its face, the Clark Note matured on May 25, 2013.  Compl. [102] at Ex. 23; FRCP 56(c) Snelson Aff. at ¶ 51.

57.     On its face, the Lawrence Note matured on May 25, 2013.  Compl. [102] at Ex. 29; FRCP 56(c) Snelson Aff. at ¶ 52.

58.     On its face, the S&H Febrruary Note matured on August 4, 2012.  Compl. [102] at Ex. 37; FRCP 56(c) Snelson Aff. at ¶ 53.

59. On its face, the S&H September Note matured on September 3, 2012. Compl. [102] at Ex. 40; FRCP 56(c) Snelson Aff. at ¶ 54.

60. The full outstanding amounts due under the Apartment Building Loans and S&H Loans (sometimes collectively referred to herein as the "Loans") is immediately due and owing from the Borrowers because, among other reasons and defaults, all of the Notes have matured. FRCP 56(c) Snelson Aff. at ¶ 55.

61. The Borrowers were required to pay the full outstanding amounts due under the Loans when the Notes matured. Compl. [102] at Exs. 9, 17, 23, 29, 35-37, 39-40; FRCP 56(c) Snelson Aff. at ¶ 56.

62. To date, the Borrowers have failed to pay the full outstanding amounts due under the Loans. FRCP 56(c) Snelson Aff. at ¶ 57.

63. To date, the 4526 Sheridan Guarantors have not paid the balance due under the 4526 Sheridan Note. FRCP 56(c) Snelson Aff. at ¶ 58.

64. To date, the 7645 Sheridan Guarantors have not paid the balance due under the 7645 Sheridan Note. FRCP 56(c) Snelson Aff. at ¶ 59.

65. To date, the Clark Guarantors have not paid the balance due under the Clark Note. FRCP 56(c) Snelson Aff. at ¶ 60.

66. To date, the Lawrence Guarantors have not paid the balance due under the Lawrence Note. FRCP 56(c) Snelson Aff. at ¶ 61.

67. To date, the S&H February Guarantors have not paid the balance due under the S&H February Note. FRCP 56(c) Snelson Aff. at ¶ 62.

68. To date, the S&H September Guarantors have not paid the balance due under the S&H September Note. FRCP 56(c) Snelson Aff. at ¶ 63.

**FirstMerit's Rights and Remedies under the Forbearance Agreements**

69. The Borrowers admit, acknowledge, and agree in the Forbearance Agreements that FirstMerit has the immediate right to foreclose the Ashland Mortgage, 4526 Sheridan Mortgage, 7645 Sheridan Mortgage, and Clark Mortgage (sometimes collective referred to herein as the "Mortgages"). Compl. [102] at Ex. 3 (¶¶ I and 4(i)).

70. The Borrowers acknowledge, admit, and agree in the Forbearance Agreements that they have no defenses, affirmative defenses, claims, counterclaims or setoffs to FirstMerit's right to foreclose the Mortgages. Compl. [102] at Ex. 3 (¶ 2(a)), Ex. 4 (¶ 2(a)).

71. FirstMerit has the immediate right to collect from the Borrowers the full amounts due under the Notes. Compl. [102] at Ex. 3 (¶¶ I and 4(i)), Ex. 4 (¶¶ I and 4(i)).

72. The Borrowers acknowledge, admit, and agree in the Forbearance Agreements that they have no defenses, affirmative defenses, claims, counterclaims or setoffs to the collection of the Notes. Compl. [102] at Ex. 3 ( ¶ 2(a)), Ex. 4 (¶ 2(a)).

73. FirstMerit has the immediate right to collect from the 4526 Sheridan Guarantors, 7645 Sheridan Guarantors, Clark Guarantors, Lawrence Guarantors, S&H February Guarantors, and S&H September Guarantors (hereinafter sometimes collectively referred to as the "Guarantors"), the full amounts due under the 4526 Sheridan Guaranties, 7645 Sheridan Guaranties, Clark Guaranties, Lawrence Guaranties, S&H February Guaranties, and S&H September Guaranties (hereinafter sometimes collectively referred to as the "Guaranties"). Compl. [102] at Ex. 3 (¶¶ I and 4(i)); Ex. 4 (¶¶ I and 4(i)), and Exs. 13-16, 21-22, 27-28, 33-34, 42-44, 45-47; Answer [113] at ¶¶ 14, 18, 22, 26, 54, 58, 62, 66; Answer [114] at ¶¶ 14, 18, 22, 26, 29, 32, 54, 58, 62, 66, 105, 110; Answer [194] at ¶¶ 14, 29, 32, 54, 105, 110.

74. The Guarantors acknowledge, admit, and agree in the Guaranties that they have no defenses, affirmative defenses, claims, counterclaims or setoffs to the collection of the Guaranties. Compl. [102] at Ex. 3 (¶¶ I and 4(i)); Ex. 4 (¶¶ I and 4(i)), and Exs. 13-16, 21-22, 27-28, 33-34, 42-44, 45-47; Answer [113] at ¶¶ 14, 18, 22, 26, 54, 58, 62, 66; Answer [114] at ¶¶ 14, 18, 22, 26, 29, 32, 54, 58, 62, 66, 105, 110; Answer [194] at ¶¶ 14, 29, 32, 54, 105, 110.

### Statement as to Damages

75. As of January 31, 2014, the outstanding balance on the 4526 Sheridan Note, after allowing all just credits, deductions, and set-offs, an outstanding balance of $4,793,681.36, with interest accruing on the unpaid principal balance at $1,020.94 per day. This figure excludes attorney's fees and costs of collection incurred by FirstMerit as a result of the defaults alleged herein. Snelson Aff. [325] at ¶ 48.

76. As of January 31, 2014, the outstanding balance on the 7645 Sheridan Note, after allowing all just credits, deductions, and set-offs, an outstanding balance of $7,182,339.54, with interest accruing on the unpaid principal balance at $1,690.33 per day. This figure excludes attorney's fees and costs of collection incurred by FirstMerit as a result of the defaults alleged herein. Snelson Aff. [325] at ¶ 49.

77. As of January 31, 2014, the outstanding balance of the Clark Note, after allowing all just credits, deductions, and set-offs, an outstanding balance of $3,651,588.45, with interest accruing on the unpaid principal balance at $803.08 per day. This figure excludes attorney's fees and costs of collection incurred by FirstMerit as a result of the defaults alleged herein. Snelson Aff. [325] at ¶ 50.

78. As of January 31, 2014, the outstanding balance on the Lawrence Note, after allowing all just credits, deductions, and set-offs, an outstanding balance of $1,106,295.59. This

figure excludes attorney's fees and costs of collection incurred by FirstMerit as a result of the defaults alleged herein.  Snelson Aff. [325] at ¶ 52.

79. As of January 31, 2014, the outstanding balance on the S&H February Note, after allowing all just credits, deductions, and set-offs, an outstanding balance of $856,467.36, with interest accruing on the unpaid principal balance at $182.34 per day.  This figure excludes attorney's fees and costs of collection incurred by FirstMerit as a result of the defaults alleged herein.  Snelson Aff. [325] at ¶ 53.

80. As of January 31, 2014, the outstanding balance on the S&H September Note, after allowing all just credits, deductions, and set-offs, an outstanding balance of $382,285.98, with interest accruing on the unpaid principal balance at $84.34 per day.  This figure excludes attorney's fees and costs of collection incurred by FirstMerit as a result of the defaults alleged herein.  Snelson Aff. [325] at ¶ 54.

Respectfully submitted,

FirstMerit Bank, N.A., as successor-in-interest to the FDIC, as Receiver for Midwest Bank and Trust Company,

By: s/William J. Serritella, Jr.
wserritella@agdglaw.com

William J. Serritella, Jr. (ARDC #6210001)
Brianna M. Sansone (ARDC #6298677)
Aronberg Goldgehn
330 North Wabash, Suite 1700
Chicago, Illinois 60611
(312) 828-9600

1546749.6